FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2010 OCT 15 P 12: 52

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

DAVID DWAYNE CASSADY,          )
                               )
          Plaintiff,           )
                               )
                               )
     v.                        )          CV 109-128
                               )
                               )
VICTOR L. WALKER, Warden, et al.,  )
                               )
          Defendants.          )

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

_____

The above-captioned case was filed pursuant to 42 U.S.C. § 1983 and is now before

the Court on "Defendants' Pre-Answer Motion to Dismiss" (doc. no. 16). For the reasons

set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' Motion be

**GRANTED IN PART** and **DENIED IN PART**.

I.     **BACKGROUND**[1]

Plaintiff commenced this case in October of 2009; at the time, he was proceeding *pro*

*se*. (Doc. no. 1.) On January 7, 2010, Defendants moved for a more definite statement,

arguing that Plaintiff's complaint constituted a shotgun pleading that failed to comply with

_____

[1]Because this matter is before the court on a motion to dismiss pursuant to Fed. R.
Civ. P. 12(b)(6), the Court will accept as true the factual allegations in Plaintiff's amended
complaint and draw all reasonable inferences supported by those allegations in Plaintiff's
favor. Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010).

Fed. R. Civ. P. 8. (Doc. no. 4.) The Court granted Defendants' motion for a more definite statement and gave Plaintiff an opportunity to amend his Complaint. (Doc. no. 12.) Plaintiff then retained counsel and submitted an Amended Complaint on March 1, 2010. (Doc. no. 13.) In the instant motion, Defendants have challenged the sufficiency of that Amended Complaint.

At the time he filed his Amended Complaint, Plaintiff was a prisoner housed in the Augusta State Medical Prison ("ASMP"). (Doc. no. 13, pp. 2-3.) Defendants are prison officials and employees at ASMP: Defendant Walker is the Warden of ASMP, Defendant Wilkes is the Deputy Warden of Care and Treatment at ASMP, Defendants Evans and Scott are correctional officers as ASMP, and Defendant Garnett is a nurse at ASMP. (Id. at 2.)

Plaintiff transferred to ASMP in February of 2009 after being diagnosed with Reactive Airway Dysfunction Syndrome ("RADS"), an asthma-like syndrome caused in Plaintiff's case by chronic exposure to environmental tobacco smoke ("ETS"). (Id. at 3.) According to Plaintiff's Amended Complaint, he was subjected to high levels of ETS for a period of several months during 2009 because his cell mates were heavy smokers who smoked in Plaintiff's living space. (Id. at 4.) During that time, 92% of the inmates in Plaintiff's cell block were smokers. (Id.)

On March 5, 2009, Plaintiff filed an informal grievance with Defendant Wilkes in which he complained of the ETS in his living quarters and requested a transfer to a smoke-free environment. (Id. at 3.) The informal grievance process came to an end on March 19, 2009 without a satisfactory resolution for Plaintiff. (Id.) The next day, March 20, Plaintiff filed a formal grievance with Defendant Walker, again requesting a smoke-free environment

2

due to his medical condition and high level of exposure to ETS. (Id.) Defendant Walker denied Plaintiff's grievance on April 20, 2009. (Id.) Plaintiff appealed the denial of his grievance to the Georgia Department of Corrections, which denied his appeal on July 7, 2009. (Id. at 3-4.)

On April 3, 2009, during the pendency of Plaintiff's formal grievance with Defendant Walker, Plaintiff's diagnosis of RADS was upgraded to the more serious conditions of Chronic Obstructive Pulmonary Disease ("COPD") and moderate to severe asthma. (Id. at 4.) In addition, the pulmonologist responsible for the diagnosis requested in a permanent profile that Plaintiff not be exposed to ETS. (Id.) On April 5, 2009, Plaintiff wrote to Defendants Wilkes and Walker, notifying them of his recent diagnosis and the pulmonologist's instruction that he not be exposed to ETS, along with the fact that his cell mate continued to smoke in his living space; in his letter, he renewed his request for assignment to living quarters free of ETS. (Id.) Defendant Wilkes responded to Plaintiff on April 8, 2009, informing him that he was ineligible to move to another room and that such a move, if allowed, "would not change [his] situation." (Id.) Plaintiff reasserted his complaints in letters sent on April 9, 2009 to Defendant Wilkes and on April 23, 2009 to Defendants Walker, Wilkes, and Evans. (Id.)

On July 1, 2009, Plaintiff was moved to a mental health lock down unit following an attempted suicide. (Id. at 5.) While in the lock down unit, Plaintiff requested that Defendant Garnett provide him access to his inhaler and breathing treatment. (Id.) Defendant Garnett refused this request. (Id.) Plaintiff then requested his breathing treatment from Defendant Scott, the highest ranking officer present at the time of the request, and was again refused.

(Id.)

On September 11, 2009, the Honorable William T. Moore, Jr., United States District Judge, issued an injunction in a separate case, Cassady v. Owens, CV 408-250 (S.D. Ga. Nov. 9, 2009) (hereinafter "CV 408-250"), requiring that Plaintiff be afforded smoke-free accommodations. (Id. at 6.) Plaintiff alleges that he has not been housed in a smoke-free living space despite this injunction, and despite the requests he has made to Defendants Walker, Wilkes, and Evans, all of whom have authority to assign him to a different cell. (Id.) Plaintiff continues to suffer from ETS-triggered asthma attacks and further deterioration of his respiratory condition. (Id. at 5.)

Finally, the Court takes note of Defendants' contention that Plaintiff was transferred from ASMP to Hays State Prison on May 11, 2010. (Doc. no. 16-2, p. 4.) Plaintiff neither confirms nor disputes that this transfer occurred in his response to the instant motion. (Doc. no. 18.)

## II. DISCUSSION

In the instant motion, Defendants offer several arguments for the dismissal of Plaintiff's complaint. They assert that Plaintiff's claim for monetary damages against Defendant Walker in his official capacity should be dismissed because it is barred by the Eleventh Amendment. (Doc. no. 16-1, pp. 3-4.) They also contend that Plaintiff's pleadings fail to state a valid Eighth Amendment claim. (Id. at 5-7.) In addition, they maintain that Plaintiff's claims against Defendants Walker, Wilkes, and Evans should be dismissed because those defendants cannot be held vicariously liable for the acts of others in a § 1983 action. (Id. at 9-10.) Furthermore, Defendants argue that they are entitled to qualified

4

immunity, which warrants dismissal of all Plaintiff's claims. (<u>Id.</u> at 10-12.) Finally, they allege that Plaintiff has now been transferred to a non-smoking facility, and argue that his claims for injunctive relief are therefore moot. (<u>Id.</u> at 12-13; doc. no. 16-2.) As explained below, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** as to Plaintiff's official capacity claim for injunctive relief against Defendant Walker, and that it be **DENIED** as to Plaintiff's claims for monetary damages against all Defendants in their individual capacities.

### A.    Legal Standard

A motion under Rule 12(b)(6) challenges the legal sufficiency of the complaint. "In essence, a movant says, 'Even if everything you allege is true, the law affords you no relief.'" <u>Johnson v. Fleet Finance, Inc.</u>, 785 F. Supp. 1003, 1005 (S.D. Ga. 1992) (Edenfield, J.). In deciding a motion to dismiss under Rule 12(b)(6), all of the non-moving party's allegations must be presumed true and all reasonable inferences must be construed in the light most favorable to the non-moving party. <u>Miree v. DeKalb County, Ga.</u>, 433 U.S. 25, 27 n.2 (1977); <u>Powell v. Lennon</u>, 914 F.2d 1459, 1463 (11th Cir. 1990). Furthermore, a claim should not be dismissed if the facts alleged in the complaint are sufficient to state a claim for relief that is plausible on its face. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 561-62 (2007). Moreover, granting a motion to dismiss is disfavored and rare. <u>Brooks v. Blue Cross and Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997). Finally, while factual allegations in the complaint must be taken as true when considering a motion to dismiss, there is no requirement that the Court must accept as true the plaintiff's conclusions of law. <u>See Solis-Ramirez v. United States Dep't of Justice</u>, 758 F.2d 1426, 1429 (11th Cir. 1985).

With these principles in mind, the Court turns its attention to the instant motion.

### B.     Eleventh Amendment Bar as to Claim Against Defendant Walker

Defendants argue for dismissal of Plaintiff's damages claim against Defendant Walker in his official capacity. Defendants rely on the principle that the Eleventh Amendment bars § 1983 claims for monetary damages against state officials sued in their official capacities when the state is the real party in interest or any monetary recovery would be paid from state funds. See Will v. Mich. Dept. of State Police, 491 U.S. 58, 66-71 (1989); Jackson v. Ga. Dep't of Transp., 16 F.3d 1573, 1577 (11th Cir. 1994).

While Defendants' summary of the law on this point may be correct, their argument is misplaced in this instance because, as Plaintiff clarifies in his response to Defendants' Pre-Answer Motion to Dismiss, his claim against Defendant Walker in his official capacity is exclusively for declaratory and injunctive relief. (See doc. no. 18, pp. 6-7.) Where, as here, a state official is sued in his official capacity for injunctive relief, the Eleventh Amendment does not bar the claim. See Will, 491 U.S. at 71 & n.10 (rejecting § 1983 claim against official sued in official capacity for money damages on Eleventh Amendment grounds but distinguishing situation where state official is sued in official capacity for injunctive relief); Washington v. Bauer, 149 F. App'x 867, 870 (11th Cir. 2005) ("[A] claimant 'may bring a § 1983 action against state officials in their official capacities . . . for prospective, injunctive relief.'" (quoting Miller v. King, 384 F.3d 1248, 1260 (11th Cir. 2004))). Therefore, the Eleventh Amendment does not provide a valid basis for the dismissal of Plaintiff's claim

against Defendant Walker in his official capacity.[2]

## C. Sufficiency of Plaintiff's Pleadings to State an Eighth Amendment Claim

Defendants argue that Plaintiff's entire case should be dismissed for failure to state an Eighth Amendment ETS claim. Specifically, Defendants assert that Plaintiff's allegations as to the degree and frequency of his ETS exposure are insufficient and that his allegations are inadequate to show deliberate indifference on the part of Defendants.

A prisoner can recover under § 1983 for a violation of the Eighth Amendment if he can show that a prison official was deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Kelley v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005). To meet this standard, "a plaintiff must satisfy both an objective and a subjective inquiry. First, a plaintiff must set forth evidence of an objectively serious medical need. Second, a plaintiff must prove that the prison official acted with an attitude of deliberate indifference to that need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (punctuation and

---

[2]Based on the organization of Defendants' motion to dismiss, it appears that apart from their Eleventh Amendment argument, they assert that Plaintiff's claims against Defendant Walker in his official capacity should be dismissed because he is not a "person" within the meaning of § 1983 when sued in his official capacity. (See doc. no. 16-1, p. 4.) However, this assertion is more properly treated as a part of Defendants' Eleventh Amendment argument rather than a separate argument for dismissal. In Will, the Supreme Court reasoned that the Eleventh Amendment barred § 1983 actions against state officials sued in their official capacities for monetary damages because such actions are tantamount to actions against States, which are not "persons" under § 1983. Will, 491 U.S. at 71. Thus, the fact that a state official sued in his official capacity for monetary damages does not qualify as a "person" is not a separate basis for dismissal, but rather is the rationale behind the Eleventh Amendment bar. See id. At any rate, this "personhood" analysis does not bar recovery where, as here, a state official is sued in his official capacity only for injunctive relief. Id. at 71 n.10 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the state." (citation omitted)).

citations omitted). "Deliberate indifference," the requisite state of mind for all Eighth Amendment claims except excessive force, requires proof that the prison official disregarded an excessive risk of which he was actually aware. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994); Thomas v. Bryant, No. 09-11658, 2010 U.S. App. LEXIS 17419, at *35-36 (11th Cir. Aug. 20, 2010). In the context of an Eighth Amendment claim based on ETS exposure, the Eleventh Circuit has instructed that

> a prisoner can state a cause of action . . . by alleging that prison officials have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health. As for the objective factor, the prisoner must show that he himself is being exposed to unreasonably high levels of ETS. . . . As for the subjective factor, the prisoner must show that prison authorities demonstrated a "deliberate indifference" to his plight.

Kelley, 400 F.3d at 1284 (quoting Helling v. McKinney, 509 U.S. 25, 35-36 (1993)) (citations and punctuation omitted). To satisfy the objective factor, a prisoner must show, in addition to unreasonably high levels of ETS, that "the risk to his health is so grave as to violate contemporary standards of decency." Giddens v. Calhoun State Prison, 277 F. App'x 847, 847-48 (11th Cir. 2007).[3] As for the subjective component, the Eleventh Circuit has

---

[3]Prior cases in which courts have dealt with Eighth Amendment ETS claims have further clarified the type of factual circumstances that will support a finding of unreasonably high levels of ETS exposure that pose a risk so grave as to violate contemporary standards of decency. Compare, e.g., Kelley, 400 F.3d at 1285 (affirming summary judgment against claimant who only asserted unproven allegations that inmates in his pod smoked and ventilation was poor), Oliver v. Deen, 77 F.3d 156, 158-60 (7th Cir. 1996) (affirming summary judgment against claimant who had mild asthma and spent 133 days with cell mates who smoked), and Richardson v. Spurlock, 260 F.3d 495, 498 (5th Cir. 2001) (affirming dismissal of in forma pauperis complaint where claimant only alleged "intermittent exposure to smoke during bus rides"), with Rochon v. City of Angola, 122 F.3d 319, 320 (5th Cir. 1997) (reversing dismissal of ETS claim where claimant alleged that he was "required to live and work in environments filled with tobacco smoke"), and Whitley v. Hunt, 158 F.3d 882, 888 (5th Cir. 1998) (reversing dismissal of in forma pauperis

8

held that "[t]o establish deliberate indifference, the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Giddens, 277 F. App'x at 848.

A prisoner can also establish deliberate indifference to a serious medical need by showing intentional interference with a prescribed treatment. Estelle, 429 U.S. at 104-05; Brown v. Smith, 187 F. App'x 947, 950 (11th Cir. 2006) (holding claimant had stated an Eighth Amendment claim by alleging that prison officials continually housed claimant in living quarters where ETS was common despite physician's request that he be housed in ETS-free environment). In the context of a claim premised on interference with medical treatment, deliberate indifference means showing that the defendant knew of an excessive risk to inmate health and disregarded that risk by conduct that is more than gross negligence. Farmer, 511 U.S. at 837-38 (1994); Goebert v. Lee, 510 F.3d 1312, 1326 (11th Cir. 2007).

Here, Plaintiff's ETS claims should not be dismissed for failure to allege facts capable of showing unreasonably high levels of ETS. Contrary to Defendants' assertion that "[t]here is no allegation of high ETS levels in the Complaint," (doc. no. 16-1, p. 6), Plaintiff alleges that "[f]or several months during 2009, [he] was housed at ASMP with cell mates who were heavy smokers and who smoked in their shared living space." (Doc. no. 13, p. 4.) Plaintiff also alleges that "[d]uring that time, 92% of the inmates in [his] cell block smoked,

complaint where claimant alleged he was forced to sleep in smoking dorm for 13 weeks), *overruled on other grounds by* Booth v. Churner, 532 U.S. 731 (2001). See also Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992) (holding that the objective component requires ETS exposure that causes a "serious medical threat, not just discomfort" and that "mere exposure to ETS, without more, does not constitute a deprivation of a prisoner's Eighth Amendment rights").

and [he] was subjected to high levels of ETS." (Id.) Presuming these allegations to be true and drawing all reasonable inferences in Plaintiff's favor, it is apparent that Plaintiff's has sufficiently pled unreasonably high levels of ETS that were so grave as to violate contemporary standards of decency. Plaintiff's complaint should therefore not be subject to dismissal for failure to satisfy the objective component of his Eighth Amendment ETS claim.

Defendants also miss the mark with their assertion that Plaintiff's claims against Defendants Walker, Wilkes, and Evans should be dismissed for failure to allege facts that would support a finding of deliberate indifference on their part. Defendants assert, in conclusory fashion, that Plaintiff's "[Amended] Complaint is void of any specific instances of indifference by Defendants Walker, Wilkes, or Evans" and that Plaintiff "has not stated that [Defendants Walker, Wilkes, and Evans] ignored possible ETS dangers." (Doc. no. 16-1, p. 7.) The Court disagrees. Plaintiff alleges that Defendants Wilkes and Walker were first made aware of Plaintiff's problems with ETS when Plaintiff filed formal and informal grievances in March 2009. (Doc. no. 13, p. 3.) On April 5, 2009, Plaintiff informed Defendants Wilkes and Walker in a letter that his newly-ordered medical profile recommended no ETS exposure in light of his recent diagnosis of COPD, and that his cell mate smoked in their shared living space. (Id. at 4.) Defendant Wilkes in particular appears to have been cognizant of Plaintiff's plight, because he responded to Plaintiff, refusing his request to move into ETS-free living quarters and telling him that transfer to another cell "would not change [his] situation." (Id.) Plaintiff repeated his request to Defendant Wilkes in a letter sent April 9, 2009, and then, on April 23, 2009, wrote a letter to Defendants Walker, Wilkes, and Evans yet again explaining that his medical profile recommended an

10

ETS-free environment and that he was being subjected to high levels of ETS in his living quarters. (Id. at 5.) Furthermore, on October 11, 2009, Plaintiff obtained a court order requiring the Commissioner of the Georgia Department of Corrections to provide him with smoke-free accommodations. (Id. at 6.) Yet, Plaintiff maintains that as of the filing of his Amended Complaint he still had not been housed in a smoke-free environment. (Id.) Thus, according to Plaintiff's allegations, which the Court presumes to be true at this stage, Plaintiff essentially spent the entire month of April 2009 informing Defendants Wilkes, Walker, and Evans, in writing, of his serious medical condition, his ETS exposure, and his medical profile recommending no exposure to ETS; yet none of these Defendants exercised their authority to assign him to a different cell. In light of these allegations, Plaintiff has adequately pled that Defendants Walker, Wilkes, and Evans subjectively knew of the risk posed by allowing Plaintiff to be exposed to ETS, and that their disregard of that risk was more than merely negligent. Therefore, Plaintiff's claims against Defendants Walker, Wilkes, and Evans should not be dismissed for failure to allege facts that, if true, would support a finding of deliberate indifference.

The Court also disagrees with Defendants' contention that Plaintiff has failed to plead deliberate indifference on the part of Defendants Scott and Garnett. Plaintiff alleges that while in the lock down unit at ASMP, he requested that Defendant Garnett, a nurse, provide his physician-ordered breathing treatment, and he refused. (Doc. no. 13, p. 5.) It may be reasonably inferred that, as a nurse entrusted with Plaintiff's medical care, Defendant Garnett was aware of Plaintiff's serious respiratory condition and the risk of withholding the

treatment regimen that his physician prescribed for that condition.[4] Cf. Steele v. Shah, 87 F.3d 1266 (11th Cir. 1996) (holding that a factfinder may "conclude that [a prison official] knew of a substantial risk from the very fact that the risk was obvious. . . ." (quoting Farmer, 511 U.S. at 842)). Having inferred that he possessed such awareness, Defendant Garnett's refusal to allow Plaintiff access to his treatment would clearly constitute a disregard of that risk. Plaintiff has therefore sufficiently pleaded deliberate indifference on the part of Defendant Garnett.

The deliberate indifference analysis with respect to Defendant Scott is very similar. Because of his position as a correctional officer charged with Plaintiff's supervision, and because he received a request for a physician-ordered treatment, it is reasonable to infer, as the Court must at this stage, that he was aware of the risk to Plaintiff's health that could result from denial of his treatment. And as with Defendant Garnett, his refusal to exercise his authority to allow Plaintiff his treatment in the face of that risk would amount to disregard of the risk. Accordingly, Plaintiff's claim against Defendant Scott should also not be dismissed for failure to adequately plead deliberate indifference.

### D. Vicarious Liability of Defendants Walker, Wilkes, and Evans

Defendants also argue for the dismissal of Plaintiff's claims against Defendants Walker, Wilkes, and Evans on the basis that Plaintiff has failed to allege that they violated his Eighth Amendment rights by their own individual actions, and they cannot be held

---

[4]Notably, Defendants do not question whether Plaintiff had a serious medical need for his inhaler and breathing treatment such that depriving him of access to them posed an excessive risk to Plaintiff's health. The Court will therefore not at this time consider dismissal on the basis that denying Plaintiff his treatment did not in fact pose an excessive risk to his health.

vicariously liable for the actions of others.

In support of their argument, Defendants have recited legal doctrine that, while perhaps correct in the abstract, has no relevance to this case. As Defendants suggest, "[S]ection 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986); Keating, 598 F.3d at 763-65 (holding that in a § 1983 action, prison officials cannot be held vicariously liable for acts of others). This is not a case, however, in which Plaintiff alleges that his warden should be held liable for the acts of lower-level prison officials. Rather, Plaintiff alleges that Defendants Walker, Wilkes, and Evans were aware of his serious medical condition and his need to be provided housing free of ETS because of his letters, grievances, and a court order granting injunctive relief in his favor; yet each of them refused to exercise his authority[5] to provide Plaintiff with ETS-free housing, thereby causing Plaintiff's respiratory condition to worsen. (Doc. no. 13, pp. 4-6.) Therefore, with respect to Defendants Walker, Wilkes, and Evans, Plaintiff has satisfied the requirement that "in a § 1983 action, a plaintiff must plead that each Government-official

---

[5]Defendants contend that Plaintiff has "failed to allege any specific facts to support that [Defendants Walker, Wilkes, and Evans] are individually responsible for his smoking environment." (Doc. no. 16-1, p. 10.) The Court finds Plaintiff's pleadings to be adequate with regard to Defendants Walker, Wilkes, and Evans' individual responsibility for Plaintiff's smoking environment. First, Plaintiff alleges that "Defendants Walker, Wilkes, and Evans all have authority to have Plaintiff assigned to a different dorm or cell." (Doc. no. 13, p. 6.) Moreover, Plaintiff sets forth in his amended complaint these Defendants' respective ranks within the correctional system, which supports the reasonable inference that they have individual authority over inmates' housing assignments at ASMP. While this issue may arise again at summary judgment, Plaintiff's allegations regarding these Defendants' responsibility for his smoking environment are sufficient to avoid dismissal at the pleading stage.

defendant, through the official's own individual actions, has violated the Constitution." Keating, 598 F.3d at 763 (quoting Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1948 (2009)). Accordingly, Plaintiff's claims against these Defendants should not be dismissed for failure to allege that they caused him injury in violation of his Eighth Amendment rights by their own actions.

### E. Qualified Immunity

Defendants contend that even if Plaintiff's claims are not subject to dismissal based on their previous arguments, they should be dismissed because Defendants are entitled to qualified immunity. The crux of Defendants' qualified immunity argument is that Plaintiff "cannot show that the law regarding the Defendants' alleged actions was clearly established" because "[t]here is no case law informing Defendants that they violated [Plaintiff's] constitutional rights." (Doc. no. 16-1, pp. 11-12.) Defendants maintain that their alleged actions did not violate the applicable law, since they were at worst negligent in their enforcement of a nonsmoking policy, and such negligence does not rise to the level of an Eighth Amendment violation.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 555 U.S. ___, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Townsend v. Jefferson County, 601 F.3d 1152, 1157 (11th Cir. 2010). For an official's acts to be within their discretionary authority, they must be "(1) undertaken pursuant to the performance of her duties and (2) within the scope of her authority." Jones

v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006) (punctuation omitted) (quoting Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)). If the defendant shows that he was acting within his discretionary authority, then "the plaintiff must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Townsend, 601 F.3d at 1158 (punctuation omitted) (quoting Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)). Furthermore, "[a] right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (internal citations omitted). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). Also, the Eleventh Circuit has held: "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decision of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

As an initial matter, the Court observes that in Defendants' Motion to Dismiss, they state that "there is no dispute that Defendants were acting under color of law during the relevant time period" and, without addressing the issue of discretionary authority, move on to discuss the other issues implicated by their assertion of qualified immunity. It is not a given, however, that all of the actions taken by Defendants' Walker, Wilkes, and Evans were within their discretionary authority. Defendants have the burden to show that they "were

15

acting within the scope of [their] discretionary authority when the allegedly wrongful acts occurred." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). Furthermore, "[t]o establish that a defendant is acting within the scope of his discretionary authority, there must be more than just a bald assertion . . . that the complained-of actions were undertaken pursuant to the performance of his duties and within the scope of his discretionary authority . . . ." Here, Defendants have not even attempted to meet their burden of showing that they were acting within their discretionary authority when the allegedly wrongful acts occurred.

Moreover, Defendants' argument for qualified immunity is unpersuasive. First, there is no reference to a smoking policy at ASMP in Plaintiff's amended complaint or any materials attached to any documents filed by either party. The Court is therefore unable to consider such smoking policy, or its enforcement, in ruling on a motion to dismiss. Fed. R. Civ. P. 12(d). Thus, Defendants' qualified immunity argument is invalid to the extent that it is premised on the fact that, under the applicable law, the negligent enforcement of a smoking policy does not constitute a constitutional violation.

In addition, there is no shortage of Supreme Court and Eleventh Circuit Court of Appeals case law establishing that "a prisoner can state a cause of action under the Eighth Amendment for exposure to ETS by alleging that prison officials have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." Kelley, 400 F.3d at 1284 (quoting Helling, 509 U.S. at 35); see also Brown, 187 F. App'x at 948 (holding that it is "clearly established" that an Eighth Amendment violation occurs when "state caretakers intentionally fail to follow a physician's prescribed course of treatment for an inmate's serious medical condition" by placing him in

environments with ETS despite a physician's request to that he be provided ETS-free accommodations); Young v. City of Augusta, 59 F.3d 1160, 1169 n.17 (11th Cir. 1995) ("The Eighth Amendment prohibits state caretakers from intentionally delaying medical care or knowingly inferring with treatment once prescribed."). In light of this case law, the Court rejects Defendants' contention that they were not on notice that the conduct alleged would violate Plaintiff's constitutional rights. Accordingly, Plaintiff's claims should not be dismissed on qualified immunity grounds.[6]

### F. Mootness of Claims for Injunctive Relief

Finally, Defendants argue that Plaintiff's claims for injunctive relief relating to his confinement at ASMP are moot because he has been transferred to a different facility, and should therefore be dismissed for lack of subject matter jurisdiction.[7] In support of this assertion, Defendants have submitted the affidavit of Timothy Ward, the Facilities Director in the Corrections Division of the Georgia Department of Corrections, who attests that Plaintiff was transferred to Hays State Prison on May 11, 2010. (Doc. no. 16-2, p. 4.) In

---

[6]Defendants also contend that they are entitled to qualified immunity because Plaintiff has proffered "no evidence of a serious medical need [] and Defendants' [sic] did not possess actual knowledge as to the alleged risk of harm." (Doc. no. 16-1, p. 12.) Regarding the first portion of this contention, Plaintiff has no obligation to bring any evidence whatsoever to avoid a motion to dismiss. Furthermore, the assertion that Defendants did not possess actual knowledge of the risk to Plaintiff's health is duplicative of Defendants' identical assertion in support of their argument that Plaintiff failed to state an Eighth Amendment claim and does not warrant dismissal for the reasons set forth above. See supra Part B.

[7]Defendants brought the instant motion pursuant to Fed. R. Civ. P. 12(b)(6) and do not reference Rule 12(b)(1). (Doc. no. 16-1, pp. 1, 12-13.) Nevertheless, because their mootness argument is premised on a lack of subject matter jurisdiction, the Court will construe it as a motion to dismiss for lack of subject matter jurisdiction brought pursuant to Fed. R. Civ. P. 12(b)(1).

opposition to this contention, Plaintiff argues that he makes no reference to a transfer in his amended complaint, and, since the Court cannot consider material outside his pleadings while ruling on a motion to dismiss, his claim for injunctive relief should not be dismissed. (Doc. no. 18, p. 18.)

By challenging a claim as moot, a party calls into question the adjudicating court's subject matter jurisdiction to hear the claim, since a moot claim fails to present the sort of case or controversy that Article III requires for a federal court to hear the claim. Spencer v. Kemna, 523 U.S. 1, 7 (1998); 15 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 101.02 (3d ed. 2010) ("Because Article III is a limit on judicial power, a court will not have subject matter jurisdiction over an action absent the requisite case or controversy."). When resolving a fact-based attack on jurisdiction, a court may consult materials outside the pleadings without incurring the usual effect of converting the motion into a motion for summary judgment. Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)[8] ("[Rule 12(d)] provides that a motion to dismiss for failure to state a claim will be automatically converted into a motion for summary judgment (Rule 56) if the court considers matters outside the pleadings. . . . This protection is not, however, provided the plaintiff who faces dismissal for lack of subject matter jurisdiction." (footnote omitted)); see also Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008) (noting that in deciding matters of abatement, such as jurisdiction, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes"). Moreover, the usual presumption that the allegations in Plaintiff's

---

[8]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

complaint are true does not apply in making jurisdictional determinations. Williamson, 645 F.2d at 412.

Here, because Defendants have asserted that Plaintiff's claim for injunctive relief is moot, thereby challenging the Court's subject matter jurisdiction over that claim, the Court will exercise its authority to consider materials outside of Plaintiff's pleadings. The affidavit of Mr. Ward submitted by Defendants with their motion to dismiss indicates that Plaintiff has been transferred to Hays State Prison and is no longer housed at ASMP. (Doc. no. 16-2, p. 4.) Given a chance to respond to this assertion, Plaintiff has not disputed that he has been transferred – he simply argues that the Court should not consider the affidavit. In addition, the Court notes that Plaintiff has been awarded injunctive relief against ASMP through the Commissioner of the Georgia Department of Corrections in his other pending ETS case, in which Judge Moore granted his request for a preliminary injunction and ordered that he be provided smoke-free accommodations. CV 408-250, doc. no. 40, pp. 2-3.

As Defendants suggest, a claim for injunctive relief against prison officials is ordinarily subject to dismissal for mootness when a prisoner is transferred to another prison and is no longer under the control of the prison officials against whom injunctive relief is sought. Zatler v. Wainwright, 802 F.2d 397, 399 (11 Cir. 1986). However, this general rule may not apply if a prisoner is likely to return to the facility from which he has been transferred or if the transfer was effected to avoid the jurisdiction of the adjudicating court. See McKinnon v. Talladega County, Ala., 745 F.2d 1360, 1363 (11th Cir. 1984); Hardwick v. Brinson, 523 F.2d 798, 800 (5th Cir. 1975); Romano v. Rambosk, CV 206-375, 2010 U.S. Dist. LEXIS 68713, at *9 (M.D. Fla. July 9, 2010).

Taking the parties' submissions on this matter into account, the Court concludes that Plaintiff has been transferred out of ASMP. However, because the factual record is insufficiently developed as to whether Plaintiff may return to ASMP, the Court finds it inappropriate to dismiss his claim for injunctive relief as moot at this early stage of the case. Nevertheless, because of the broad injunctive relief awarded to Plaintiff in his other ETS case, the Court finds that dismissal without prejudice is appropriate so that the parties do not have to litigate a claim for relief that has already essentially been granted. Should the District Court adopt the Court's recommendation as to this claim, Plaintiff will remain free to reinitiate his claim for injunctive relief should the need arise in the future. Accordingly, as to Plaintiff's official capacity claim for injunctive relief against Defendant Walker, Defendants' Motion to Dismiss should be **GRANTED IN PART**.[9]

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss (doc. no. 16) be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's official capacity claim against Defendant Walker for injunctive relief should be **DISMISSED** without prejudice, as described above, and Defendants' motion should be **DENIED** with respect to Plaintiff's § 1983 claims for monetary damages against all Defendants in their individual capacities.

Furthermore, should the District Court adopt this Report and Recommendation, the parties shall adhere to the following requirements. Defendants shall submit their answer

---

[9]Defendant Walker should not be dismissed from the case entirely, as Plaintiff retains a viable claim for monetary damages against him in his individual capacity.

within fourteen (14) days of the District Court's adoption order. In addition, the parties shall confer as required by Fed. R. Civ. P. 26(f) and submit to the Court a proposed Rule 26(f) joint scheduling order within fourteen (14) days of the District Court's adoption order. Upon review of the joint proposal, the Court will issue an order setting the remaining deadlines in the case.

SO REPORTED and RECOMMENDED this 15th day of October, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE